1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
    Leslee Bachelier,                    )    No. CIV 07-172-TUC-CKJ (GEE)
9                                         )
              Plaintiff,                  )    **REPORT AND RECOMMENDATION**
10                                        )
    vs.                                   )
11                                        )
    Michael J. Astrue, Commissioner of the)
12   Social Security Administration,      )
                                          )
13            Defendant.                  )
                                          )
14   _____)

15
            The plaintiff filed this action for review of the final decision of the Commissioner for
16
    Social Security pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).  The case has been
17
    referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.
18
            Pending before the court is a motion for summary judgment filed by the plaintiff on
19
    November 26, 2007, and a cross-motion for summary judgment filed by the defendant on
20
    February 4, 2008.  [#15, 21][1]  The plaintiff filed a combined response and reply on February 14,
21
    2007.
22
            The Magistrate Judge recommends that the District Court, after its independent review,
23
    grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion, and
24
    remand for further proceedings.  The ALJ's conclusion that Bachelier can return to work as a
25
    telemarketer is not supported by the record.
26

27   _____

28        [1]  Clerk's record number.

PROCEDURAL HISTORY

In June of 2004, Bachelier filed an application for disability insurance benefits alleging disability due to "nausea, dizziness, pain . . ., numbness, vitreous dislodged, sensitive to light, chronic headaches."   (Tr. 114-17).   The Social Security Administration (SSA) denied her application initially and again upon reconsideration. (Tr. 86-89, 94-97).   Bachelier requested review and on September 22, 2005, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal. (Tr. 497).   In his decision, dated November 22, 2005, the ALJ found Bachelier was not disabled.  (Tr. 494-03).   Bachelier appealed, and the Appeals Council remanded the case for further proceedings.  (Tr. 52, 507-09).  On October 17, 2006, Bachelier again appeared with counsel at a hearing before the ALJ.  (Tr. 52, 67, 100).   In his decision, dated November 24, 2006, the ALJ again found Bachelier was not disabled.  (Tr. 49-52). Bachelier appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner.  (Tr. 6-9); 20 C.F.R. § 416.1481.

Bachelier then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a).  She filed the instant motion for summary judgment on November 26, 2007.   The Commissioner filed the instant cross-motion for summary judgment on February 4, 2008.

Claimant's Work History and Medical History

Bachelier was born in January of 1948  (Tr. 580).   She has worked as an office administrator, a telemarketer, and a sales assistant.  (Tr. 128, 583).   She stopped working in April of 2004, when she was involved in a rollover vehicle accident. (Tr. 128).  Since that time, she has experienced pain in her neck, shoulders, hands, arms, and back.  (Tr. 587).   She also complains of headaches, poor memory, dizziness, loss of balance, and fatigue.  (Tr. 393).

Bachelier was diagnosed with degenerative disk disease in 1995. (Tr. 393-95).  She was in a "significant car accident" in April of 2004. *Id.*  X-rays taken after the accident were negative. *Id.*  She later began experiencing "dizziness, balance problems, and worsening pain

1 . . . ." *Id.* A CT scan showed no abnormalities, but she apparently suffered a concussion in the

2 accident. *Id.*

3      In September of 2004, non-examining state agency physician, Ronald G. Nathan, M.D.,

4 reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 285-

5 97). He concluded Bachelier suffered from no medically determinable psychiatric impairment

6 and had no functional limitations. *Id.*

7      In October of 2004, Hector L. Garcia, M.D., noted Bachelier "continues to complain with

8 [sic] pain of the neck." (Tr. 335). He opined her sitting was "[o]kay for daily work." *Id.* Her

9 carrying and handling of objects was impaired. *Id.* She had no mental problem. *Id.*

10      In November of 2004, non-examining state agency physician, Robert Hirsch, M.D.,

11 completed a Residual Functional Capacity Assessment. (Tr. 321- 28, 504). Hirsch concluded

12 Bachelier could lift and/or carry 20 pounds occasionally and 10 pounds frequently. *Id.* She

13 could stand and/or walk or sit for about 6 hours in an 8-hour day. *Id.* Her handling and

14 fingering were limited on the right. *Id.* She should never climb ladders, ropes, or scaffolds. *Id.*

15      In November of 2004, Bachelier was examined by John S. LaWall, M.D., for the Arizona

16 Disability Determination Service. (Tr. 301-06). LaWall found "chronic musculoskeletal pain

17 without any evidence of disease of the peripheral nerves, nerve roots and spinal cord." *Id.* "She

18 also appears to have carpal tunnel syndrome on the right without evidence of muscular atrophy."

19 *Id.* LaWall opined Bachelier can lift and/or carry 20 pounds occasionally and 10 pounds

20 frequently. *Id.* She needs to alternate between sitting and standing. *Id.* LaWall found no

21 restrictions that might be caused by dizziness or balance problems. *Id.*

22      In November of 2004, non-examining state agency psychologist, Paul Tangeman, Ph.D.,

23 reviewed the medical records and completed a Psychiatric Review Technique form. (Tr. 307-

24 20). He concluded Bachelier suffered from no medically determinable impairment and had no

25 functional limitations. *Id.*

26      In February of 2005, Tobias M. Freebourn, M.D., wrote a detailed evaluation of

27 Bachelier's mental impairments. (Tr. 393-95). He wrote that Bachelier complained of

28 "ongoing headaches, poor memory, dizziness, loss of balance, headache pain, neck pain, back

pain, and some numbness in her right upper extremity." *Id.* "She also fatigues very easily." *Id.* She "will forget words or forget what she is going to say." *Id.* An MRI revealed some abnormalities in the frontal region indicating a concussion. *Id.* Freebourn assessed Bachelier as suffering from "[t]raumatic brain injury" and "[d]egenerative joint disease." *Id.*

In April of 2005, Shannon Biggan, Ph.D., completed a neuropsychological evaluation. (Tr. 351-58). She recorded her impression of Bachelier's condition as "310.2 post concussion syndrome, 309.81 posttraumatic stress disorder." *Id.*

In September of 2005, Biggan completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment. (Tr. 427-30). She rated Bachelier as "moderately limited" in her "ability to maintain attention and concentration for extended periods. . . ," "the ability to make simple work-related decisions," "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* She further opined "[i]f the pain, depression and PTSD has not been treated adequately, she may have significant difficulty working on a full time basis." *Id.*

On September 22, 2005, Bachelier appeared with counsel at a hearing before Administrative Law Judge (ALJ) Milan M. Dostal. (Tr. 497) She explained she is unable to work due to fatigue and headaches. (Tr. 554). She has problems with balance and dizziness. (Tr. 558). She has a fear of driving and suffers from depression. (Tr. 559).

Bachelier was insured for benefits until September 30, 2005. (Tr. 60).

In October of 2006, Hector L. Garcia, M.D., wrote the following assessment of Bachelier's condition: "Patient is suffering from Rheumatoid Arthritis, Early Organic Brain Syndrome with poor Memory and Spinal (Cervical Stenosis)." (Tr. 481). "Leslee M. Bachelier is unfit for any gainful employment." *Id.*

Also in October of 2006, Tobias Freebourn, M.D., completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment. (Tr. 489-92). He opined Bachelier could lift and/or carry 20 pounds occasionally and 25 pounds frequently. *Id.* She could stand and/or walk at least 2 hours and sit about 6 hours in an 8-hour

day. *Id.* She is also limited by pain, dizziness, headaches, recall problems, balance problems and fatigue. *Id.*

On October 17, 2006, Bachelier appeared with counsel at a second hearing before Administrative Law Judge (ALJ) Milan M. Dostal. (Tr. 577). She reported pain in her neck, shoulders, hands, arms, lower back and middle back. (Tr. 587). Vocational expert, Kathleen McAlpine offered testimony. (Tr. 603). She opined that if Bachelier had the mental limitations described by Shannon Biggan in her Medical Source Statement, she would not be able to work in her past relevant jobs as a cashier or telemarketer. (Tr. 617-18).

In November of 2006, Freebourn summarized Bachelier's condition as follows:

> I continue to see her regarding her pain issues as described previously and her limitation[s]. She is not able to work given her current condition related to her cervical stenosis, degenerative joint disease and also traumatic brain injury. . . . [S]he clearly does have disabling problems and is not able to work as a result.

(Tr. 493).

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed

1    impairments that the Commissioner acknowledges are so severe as to preclude substantial

2    gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P,

3    App.1.  If the claimant's impairment meets or equals one of the listed impairments, then the

4    claimant is presumed to be disabled, and no further inquiry is necessary.  *Ramirez v Shalala,*

5    8 F.3d 1449, 1452 (9th Cir. 1993).  If the claimant's impairment does not meet or equal a listed

6    impairment, evaluation proceeds to the next step.

7         The fourth step requires the ALJ to consider whether the claimant has sufficient residual

8    functional capacity[2] (RFC) to perform past work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

9    If the ALJ concludes the claimant has sufficient RFC, then the claim is denied.  *Id*.  If the

10   claimant cannot perform any past work, then the ALJ must move to the fifth step which requires

11   consideration of the claimant's RFC to perform other substantial gainful work in the national

12   economy in view of claimant's age, education and work experience.   20 C.F.R. §§

13   404.1520(a)(4); 416.920(a)(4).

14

15        The ALJ's Findings

16        At step one of the disability analysis, the ALJ found Bachelier "has not engaged in

17   substantial gainful activity since the alleged onset of disability." (Tr. 60).  At step two, he found

18   Bachelier has severe impairments: "status post closed head injury, history of chronic

19   musculoskeletal pain, history of carpal tunnel syndrome on the right without evidence of muscle

20   atrophy, diffuse degenerative disc disease in the neck and back, osteopenia, hypothyroidism,

21   post concussion syndrome, a depressive disorder, post traumatic stress disorder, and an

22   obsessive compulsive disorder." *Id.*  At step three, the ALJ found Bachelier's impairments did

23   not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix

24   1, Subpart P, of 20 C.F.R., Part 404.  *Id.*  The ALJ then analyzed Bachelier's residual functional

25   capacity (RFC).  (Tr. 60).   He found she "can lift/carry ten pounds frequently and twenty

26

27   ───────────────

28        [2]  Residual functional capacity is defined as that which an individual can still do despite his or
     her limitations.  20 C.F.R. §§ 404.1545, 416.945.

pounds occasionally;  she should avoid tasks requiring repetitive balancing . . . she is found to be restricted to tasks allowing her to sit/stand at will." *Id.* He further found "any psychological symptoms such as the alleged decrease in her memory are slight with only a slight effect on her ability to do basic work activities . . . .  (Tr. 60).   At step four, the ALJ found Bachelier could perform her past relevant work as a telemarketer.  (Tr. 60).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled.  *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§ 405(g), 1383(c)(3).  The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider

1   the entire record as a whole and may not affirm simply by isolating a specific quantum of

2   supporting evidence." *Id.*

3          In evaluating evidence to determine whether a claimant is disabled, the opinion of a

4   treating physician[3] is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th

5   Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only

6   if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830

7   (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating

8   physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion

9   only if he provides specific and legitimate reasons supported by substantial evidence in the

10  record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a

11  physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v.*

12  *Bowen*, 876  F.2d 759, 761 n.7 (9th Cir. 1989).

13         "The opinion of an examining physician is, in turn, entitled to greater weight than the

14  opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

15  "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the

16  uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,

17  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons

18  that are supported by substantial evidence in the record." *Id.* at 830-31.

19         "Where medical reports are inconclusive, questions of credibility and resolution of

20  conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d

21  at 751 (punctuation omitted). The Commissioner's finding that a claimant is less than credible,

22  however, must have some support in the record. *See Light v. Social Security Administration,*

23  119 F.3d 789 (9th Cir. 1997).

24         The ALJ need not accept the claimant's subjective testimony of disability, but if he

25  decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,*  81

26

27  _____

28         [3]  The term "physician" includes psychologists and other health professionals who are not
    medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

1  F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the

2  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

3  *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not

4  credible and what evidence undermines the claimant's complaints." *Id.*

5

6      DISCUSSION

7      The decision of the ALJ must be set aside. He failed to give appropriate weight to the

8  opinion of Bachelier's treating psychologist, Shannah Biggan, Ph.D.

9      Biggan opined that Bachelier's mental impairments "moderately limit[]" her ability to

10 perform certain work related tasks. (Tr. 427-30). The ALJ, however, rejected Biggan's opinion

11 and concluded Bachelier's psychological problems "have no more than a slight effect on her

12 ability to do basic work activities or can be controlled by appropriate medications without

13 significant adverse side effects."(Tr. 58). In calculating Bachelier's RFC, he implicitly relied

14 on the opinions of the non-examining disability determination physicians in concluding

15 Bachelier's mental impairments do not prevent her from returning to her past relevant work as

16 a telemarketer.

17      "Because treating physicians are employed to cure and thus have a greater opportunity

18 to know and observe the patient as an individual, their opinions are given greater weight than

19 the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.1996). Here,

20 Biggan concluded Bachelier has significant mental impairments. (Tr. 427-30). Her opinions are

21 contradicted by the non-examining state agency physicians who apparently believed Bachelier

22 has no mental impairment. (Tr. 285-98, 307-20). If the treating physician's opinion is

23 contradicted by another doctor, the ALJ may reject that opinion only if he provides specific and

24 legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. This

25 he did not do.

26      In his decision, the ALJ analyzed Bachelier's mental impairment as follows:

27      The evidence shows that the claimant does not have serious impairment in social
       or occupational functioning associated with her mental/emotional impairment(s).
28     . . . In reaching this conclusion, the undersigned has accorded particular weight

- 9 -

to the therapy records reflecting her attainment of treatment goals . . . Dr. Biggan's checklist was found to be inconsistent and unpersuasive . . . . He [sic] reported up to moderate limitations . . . .based on his [sic] April 2005 examination, but that assessment should be compared with the actual April 2005 report indicating only mildly decreased cognitive efficiency . . . . It also is significant that Dr. Biggan relied on his [sic] April 2005 examination but did not address the favorable results of subsequent therapy . . . .

(Tr. 58).

The ALJ apparently believed Biggan's opinions of functional limitation were inconsistent with her statement that Biggan has "mildly decreased cognitive efficiency." (Tr. 357). There is, however, no evidence in the record that this diagnosis is inconsistent with Bachelier's level of impairment. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975) . (While the ALJ is a legal expert in disability matters, he is not a medical expert.); *Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001). The ALJ might be assuming that someone diagnosed with a "mildly decreased"mental function would only be "mildly limited" in her ability to perform work related tasks. While this is certainly possible, such an assumption does not make allowances for the idiosyncratic nature of mental illness. Certainly some people with "mildly decreased cognitive efficiency" are only "mildly limited." Others may be profoundly limited. Presumably, that is why physicians are asked to fill out Medical Source Statements, so lay persons can see how the claimant's diagnosis affects *her* ability to perform work related tasks. Apparently, Biggan saw nothing inconsistent between her diagnosis and her opinion as to Bachelier's functional limitations. As an expert in mental impairment, she was in the best position to make this assessment. If the ALJ believed Biggan's diagnosis and her opinion were inconsistent, he could have asked for a separate medical opinion. He did not do so.

The ALJ also believed Biggan's opinions were undercut by the treatment record. The court does not agree.

Bachelier underwent cognitive treatment at Healthsouth from 6/2/05 to 6/24/05, after Biggan performed her mental evaluation. (Tr 401-11). On June 24, 2005, she was discharged after having met "all four short term goals and all long term goals." (Tr. 401). Her discharge

1  summary states her "ability to complete complex attention/problem solving tasks in therapy and

2  in home environment improved significantly with increased speed of processing." *Id.*

3      This is certainly some evidence that Bachelier's mental impairments improved.  There

4  is no evidence, however, that she improved so much that she no longer suffered from the same

5  functional limitations that Biggan observed in April of 2005.

6      The ALJ failed to give appropriate weight to the opinion of Bachelier's treating

7  psychologist.  "Where the Commissioner fails to provide adequate reasons for rejecting the

8  opinion of a treating or examining physician, we credit that opinion as a matter of law." *Lester*

9  *v. Chater*, 81 F.3d 821, 834 (9th Cir.1996).  Crediting that opinion indicates Bachelier is no

10  longer able to perform her past relevant work as a telemarketer.  *See* (Tr. 617-18).  The case

11  should be remanded with instructions that the ALJ incorporate into his RFC calculation

12  Biggan's evaluation of Bachelier's mental impairments and proceed to step 5 in the disability

13  analysis.

14      Bachelier further argues the ALJ improperly discounted the opinion of her treating

15  physician, Tobias Freebourn.  The court does not agree.

16      Freebourn wrote a summary of Bachelier's condition and concluded she was not able to

17  work due to "cervical stenosis, degenerative joint disease and also traumatic brain injury." (Tr.

18  493).  His opinion of disability, however, is contradicted by the findings the non-examining

19  state agency physicians and the examining physician, LaWall.  If the treating physician's

20  opinion is contradicted by another doctor, the ALJ may reject that opinion only if he provides

21  specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d

22  at 830.

23      In this case, the ALJ gave specific and legitimate reasons for discounting Freebourn's

24  opinion. Primarily, he concluded Freebourn's opinion of disability is not consistent with his

25  Medical Source Statement describing Bachelier's physical limitations. (Tr. 56, 489-92).  In that

26  statement, Freebourn stated Bachelier could lift and/or carry 20 pounds occasionally and 25

27  pounds frequently.  (Tr. 489-92).  She could stand and/or walk at least 2 hours and sit about 6

28

1   hours in an 8-hour day.  *Id.*  These limitations are consistent with light work and appear to be

2   inconsistent with Freebourn's later opinion of disability.

3        The ALJ also noted that Freebourn's opinion of disability was made approximately  one

4   year after Bachelier's last insured date -- September 30, 2005.  (Tr. 57-58).  There is also some

5   evidence in the record that Bachelier's condition worsened since that time.  *Id.*  Accordingly,

6   Freebourn's evaluation may not accurately describe Bachelier's impairment as it existed when

7   she was still insured.

8        Contrary to Bachelier's argument, the ALJ advanced specific and legitimate reasons for

9   discounting Freebourn's opinion of disability.  The court does not reach Bachelier's claim that

10  the ALJ improperly discounted her subjective testimony of disability.

11

12       RECOMMENDATION

13       For the foregoing reasons, the Magistrate Judge recommends that the District Court, after

14  its independent review, grant the plaintiff's Motion for Summary Judgment, deny the

15  defendant's Motion for Summary Judgment, and remand for further proceedings. [#15, 21] The

16  case should be remanded with instructions that the ALJ incorporate into his RFC calculation

17  Biggan's evaluation of Bachelier's mental impairments and proceed to step 5 in the disability

18  analysis.

19       Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within

20  10 days after being served with a copy of this Report and Recommendation.  If objections are

21  not timely filed, the party's right to de novo review may be waived.  *See United States v. Reyna-*

22  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

23       The Clerk of the Court is directed to send a copy of this Report and Recommendation

24  to all parties.

25       DATED this 2nd day of May, 2008.

26

27  _____

28             Glenda E. Edmonds
             United States Magistrate Judge